# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**RONALD LEE GRIMES**                                      **CIVIL ACTION**

**VERSUS**                                                 **NO. 13-472-RLB**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER**
**OF THE SOCIAL SECURITY**
**ADMINISTRATION**

## RULING DENYING SOCIAL SECURITY APPEAL

Plaintiff, Ronald Lee Grimes (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for supplemental security income benefits. (R. Doc. 1).[1] Having found all of the procedural prerequisites met (Tr. 1-6), the Commissioner's determination is now ripe for review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). For the reasons given below, the Court **ORDERS** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's appeal is **DISMISSED with prejudice**.

---

[1] References to documents filed in this case are designated by: (R. Doc. [docket entry number(s)] at [page number(s)]). Reference to the record of administrative proceedings filed in this case is designated by: (Tr. [page number(s)]).

## I. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## II. ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R §

404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, after considering the administrative record, the ALJ made the following determinations:

1. Plaintiff had not engaged in substantial gainful activity since September 6, 2011, the application date.

2. Plaintiff had the following severe impairments: back and knee pain.

3. Plaintiff's impairments did not meet or medically equal a listing, in particular one of the musculoskeletal listings of section 1.00.

4. Plaintiff had the residual functional capacity (RFC) to perform medium work except that he could lift and carry 50 pounds occasionally and 25 pounds frequently; stand, walk and sit for 6 hours in an 8 hour workday; and aside from his lifting and carrying restrictions, he could push and pull without limitation.

   Due to "postural limitations based on seizure precautions," Plaintiff could occasionally climb ramps, climb stairs, crouch and crawl; never climb ladders, ropes of scaffolds; frequently stoop; and balance and kneel without limitation.

   Plaintiff was also instructed to avoid exposure to "hazards," including "machinery and heights."

5. Plaintiff had no past relevant work.

6. Plaintiff was an individual of advanced age (58) on September 6, 2011, the day he filed his application for benefits.

7. Plaintiff had at least a high school education and was able to communicate in English.

8. Because Plaintiff did not have any past relevant work, the transferability of job skills was immaterial.

9. Given Plaintiff's age, education, work experience, and RFC, Rule 203.14 of the Medical Vocational Guidelines directs a finding of not disabled, as

there are a significant number of jobs in the national economy that
Plaintiff can perform.

(Tr. 13-19).

## III. DISCUSSION

The ALJ found Plaintiff was not disabled under Rule 203.14 of the Medical Vocational Guidelines and that he had the residual functional capacity to perform medium work with certain non-exertional limitations. The ALJ also found that Plaintiff did not alternatively qualify for benefits under the "Worn-Out-Worker" Rule. *See* 20 C.F.R. 416.962(b). On appeal, Plaintiff claims the ALJ's credibility assessment, and ultimately his RFC finding, are not supported by substantial evidence because the ALJ improperly rejected his alleged pain and limitations. (R. Doc. 12 at 3-5). Plaintiff likewise claims that the ALJ erred in adopting the opinion and RFC assessment of non-examining consultative physician, Maria Pons. (R. Doc. 9 at 10). Finally, Plaintiff claims the ALJ improperly rejected his claim that he qualified for benefits under the Worn-Out-Worker Rule by not applying the correct legal standard and failing to develop the record on this issue. (R. Doc. 9 at 5-7); (R. Doc. 12 at 2-3).

### A. Substantial evidence supports the ALJ's finding that Plaintiff's symptoms and limitations were not as severe as alleged.

Plaintiff testified that his impairments caused constant and increasing pain; prevented him from lifting more than 20 pounds safely, lifting 5 pounds overheard, or frequently stooping or bending; and required him to alternate between sitting, standing and lying down throughout the day. (Tr. 27, 29, 30, 38, 39, 40). If these limitations were accepted, Plaintiff would be precluded from performing medium work.[2] The ALJ, however, found Plaintiff's pain and limitations were not as severe as alleged because: (1) there were minimal medical records, as

---

[2] Plaintiff claims that if he were only found capable of performing light or sedentary work, which he claims he is, that he would be disabled under Rules 202.01, 202.02, 202.04, 202.04, 201.01, 201.02, and 204.01 of the Medical Vocational Guidelines. (R. Doc. 9 at 7).

Plaintiff failed to obtain regular treatment; (2) the medical records that did exist showed normal functioning; and (3) Plaintiff's testimony was inconsistent with his own statements and the medical evidence in the record. (Tr. 17).

Plaintiff first claims his lack of medical treatment was an improper basis for the ALJ to discredit the alleged severity of Plaintiff's symptoms. According to Plaintiff, his lack of medical treatment was justified by his inability to afford and obtain treatment. (Tr. 27-28, 40-41, 157, 180) (Plaintiff claimed he was unable to afford medical treatment, obtain care without a "family doctor," or easily get to Earl K. Long, a local charity hospital.). Nonetheless, Plaintiff suggests the ALJ dismissed his explanation based solely on "unfounded facts regarding plaintiff's social life"— specifically, Plaintiff's consumption of alcohol, tobacco and marijuana. (R. Doc. 12 at 5).

Social Security Ruling 96-7P prevents an ALJ from drawing any inferences "about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7P, 1996 WL 374186, at *7 (July 2, 1996). Consistent with this Ruling, where a claimant's lack of treatment is explained by an "inability to afford" medical care, that claimant's lack of treatment should "not be used to show" he or she is not disabled. *Sanders v. Apfel*, 136 F.3d 137, *1 (5th Cir. 1998) (magistrate judge erred in not considering "claimant's poverty").

Here, the ALJ did not violate Social Security Ruling 96-7P, because he specifically considered Plaintiff's alleged inability to afford treatment and get transportation to medical facilities. Rather, he considered the explanation, but found it not credible and insufficient to explain Plaintiff's almost complete lack of treatment. (Tr. 16-17). The ALJ's consideration of

Plaintiff's failure to seek treatment was not improper to the extent Plaintiff alleges, as it was not based solely on "unfounded facts regarding plaintiff's social life," as Plaintiff suggests. (R. Doc. 12 at 5).

Plaintiff is correct that the ALJ noted Plaintiff smoked a pack of cigarettes daily, and occasionally consumed marijuana and alcohol in assessing Plaintiff's credibility. (Tr. 17). The ALJ partly discredited Plaintiff's explanation for his lack of treatment by citing Plaintiff's ability to afford these substances. (Tr. 17). While the ALJ did not fully develop the record as to Plaintiff's costs of consuming tobacco and other substances, any error was harmless, as he relied on multiple other reasons, which are supported by substantial evidence, in determining Plaintiff's credibility and ultimately his RFC. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time."); *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) ("Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error.").

To begin, the ALJ noted the record did not indicate any attempts by Plaintiff to seek free or low-cost treatment at any of the state-run clinics in Louisiana. (Tr. 17). *See Hernandez v. Astrue*, No. 10-2793, 2011 WL 11048326, at *8 (S.D. Tex. Aug. 30, 2011) (Discrediting claimant's alleged inability to afford medical care where "Hernandez has presented no evidence that she has a disabling impairment, nor has she presented evidence that she has unsuccessfully sought additional, free medical care."). Plaintiff also did not take any over-the-counter medications. (Tr. 13-14, 16).

Plaintiff explained that his lack of treatment also resulted from "problems" getting transportation to Earl K. Long Medical Center, yet he inconsistently testified that he got rides or

took the bus when he needed to go places. (Tr. 16-17, 27, 41, 179). He was also able to obtain transportation to visit friend's houses as well as go to church. (Tr. 30, 37). Plaintiff's explanation for failing to seek out free medical treatment is not credible and inconsistent with his own statements at the hearing.

Finally, Plaintiff gave inconsistent testimony throughout the record regarding his ability to lift and his past work experience. (Tr. 30, 39) (Plaintiff claimed he could frequently lift 20 pounds); (Tr. 38) (When his attorney asked Plaintiff what happens if he tries to "lift something up from the floor," Plaintiff responded: "I get a pain, and I can't do it."); (Tr. 39) (Plaintiff claimed he could not lift 5 pounds over his head); (Tr. 27) (Plaintiff testified that he could not remember the last time he did any type of work); (Tr. 33-36) (Plaintiff later testified he continuously worked between 1976 and 2011, and went on to explain the type of jobs he held). Given these factors, the ALJ appropriately counted Plaintiff's lack of treatment and inconsistent and contradicted statements against him in determining his credibility, and ultimately his RFC.

### B. Substantial evidence supports the ALJ's determination that Plaintiff had the RFC to perform medium work with certain non-exertional limitations.

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ's RFC decision can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports his or her decision or all the evidence that he or she rejected. *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the

evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564. Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343-44.

Plaintiff claims his inability to lift 25 pounds precludes the performance of medium work. (R. Doc. 9 at 8). The record, however, does not support a finding that this limitation exists. The only medical records supplied by Plaintiff are from May 5, 2010 and March 29, 2011 emergency room visits to the Baton Rouge General Medical Center. (Tr. 168-72, 173-76). Treatment records from May 5, 2010 note Plaintiff presented with complaints of chronic leg and knee pain, and exacerbation of an earlier left knee injury. (Tr. 173). Plaintiff did not exhibit motor or sensory loss, there were no findings of instability in Plaintiff's knees, his ligaments were intact, and he ambulated with a steady gait. (Tr. 173-75). His exam indicated mild joint pain and moderate tenderness of the left knee. Although he was diagnosed with chronic knee pain, the examining doctor found no obvious cause of Plaintiff's joint pain. (Tr. 173-75). He was administered analgesic medications. (Tr. 174-76). Plaintiff's March 29, 2011 records indicate Plaintiff presented to the emergency room with complaints of constant and chronic right leg and knee pain due to a stabbing injury from years earlier. (Tr. 168-72). Plaintiff also had left lower back pain that radiated through his hip and left leg. (Tr. 173). His symptoms were reported as being of "moderate severity, but definitely noticeable." (Tr. 168). Plaintiff indicated he was "reasonably active" and there were no signs of motor or sensory deficit upon examination. His lumbar spine exam revealed no significant spasm, and his straight leg raising test was normal. (Tr. 168-69). Plaintiff had minimal left lumbar tenderness and normal range of motion on

flexion, extension and rotation of the lumbar spine. (Tr. 168-69). He was diagnosed with sciatica, and administered analgesic medication. (Tr. 170-71).[3]

The most recent medical evidence is from consultative examiner, Dr. Adeboya Francis, dated October 6, 2011 (Tr. 179-83). Dr. Francis' notes show complaints of seizure, back and knee problems. (Tr. 179). Dr. Francis relayed that beginning last year Plaintiff has experienced "recurrent syncopal spells followed by tonic clonic seizures." (Tr. 179).[4] Plaintiff was brought to the hospital several times where he "was placed on medical therapy but patient could not afford the medication or doctor's visit." (Tr. 179). Plaintiff did not know the frequency of his seizures, and explained he had neither been hospitalized nor intubated for his seizures. (Tr. 179). Plaintiff also reported chronic and sharp knee pain (an intensity of 10/10) that increases with prolonged standing and walking; knee pain sometimes required Plaintiff to "slide out of bed" and was relieved by nothing. (Tr. 179). Plaintiff described sharp, non-radiating back pain that intensified with increased bending and physical activity. (Tr. 179). Dr. Francis' physical exam found unrestricted movement of the spine in all plains, normal gait, normal coordination, negative straight leg raising test, bony point tenderness at the lumbar spine, normal heel/toe walk, good sensation and reflexes, normal muscle tone and strength, no atrophy, and normal range of motion in all joints and extremities, including the lumbar spine. (Tr. 181, 183). Plaintiff's lumbar spine x-ray showed mild to moderate degenerative joint disease and joint

---

[3] Sciatica is: "Pain in the lower back and hip radiating down the back of the thigh into the leg, initially attributed to sciatic nerve dysfunction (hence the term), but now known to usually be due to herniated lumbar disk compromising a nerve root, most commonly the L5 or S1 root." Thomas Stedman, *Stedman's Medical Dictionary* (*Stedman's*), 366550 (27th ed. 2000) (Siatica).

[4] Syncopal is describes a "[l]oss of consciousness and postural tone caused by diminished cerebral blood flow." *Stedman's* at 396790 (Syncope).

A tonic-clonic seizure is "a seizure characterized by a sequence consisting of a tonic-clonic phase." *Stedman's* at 369110 (Seizure). A clonic seizure is "characterized by repetitive rhythmical jerking of all or part of the body," while a tonic a seizure is "characterized by a sustained increase in muscle tone, of abrupt or gradual onset and offset, lasting a few seconds to a minute, usually 10-20 s[econds]." *Stedman's* at 369110.

space narrowing at the L5-S1 level of the spine. (Tr. 181). An x-ray of Plaintiff's right knee found mild to moderate degenerative joint disease. (Tr. 181). Dr. Francis assessed low back pain, right knee pain, a seizure disorder, and protein energy malnutrition. (Tr. 182). As the ALJ pointed out, Dr. Francis "placed no restrictions on the claimant's abilities." (Tr. 17).

The objective medical evidence does not support Plaintiff's alleged inability to frequently lift 25 pounds. Rather than offer probative evidence that he is unable to lift 25 pounds, Plaintiff refers the Court to his diagnosis of sciatica, leg and knee pain, joint space narrowing, and degenerative joint disease (R. Doc. 12 at 5); and to his own testimony that his impairments limited his ability to lift more than 20 pounds (R. Doc. 9 at 8).

Concerning Plaintiff's diagnoses, the ALJ fully discussed and referenced his various impairments — degenerative joint disease (Tr. 17, 181), leg and knee pain (Tr. 16, 168, 173), and joint space narrowing (17, 181). However, "[t]he mere presence of some impairment is not disabling per se. Plaintiff must show that [he] was so functionally impaired by [his diagnosed conditions] that [he] was precluded from engaging in any substantial gainful activity." *Hames*, 707 F.2d at 165. In other words, it is the limitations caused by the impairments and not the diagnoses themselves that matter. Plaintiff harps on his diagnoses without alleging that their resulting limitations, if any, would be disabling in combination. Turning to Plaintiff's testimony that he cannot lift more than 20 pounds, this evidence was not credited by the ALJ — a determination supported by substantial evidence, as the Court has already found. Otherwise, the record does not show that any physicians advised Plaintiff to limit his lifting in any way and Plaintiff does not cite to any. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (RFC supported by substantial evidence where "no physician had advised" claimant "to limit her activities in any way" and claimant's evidence was limited to her own testimony); *Harper v.*

*Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989) (substantial evidence supported ALJ's finding that claimant's subjective symptomology not credible when no physician stated that claimant was so physically limited).

In addition to the medical evidence showing normal range of motion, gait, muscle tone and strength, Plaintiff's past work experience is likewise indicative of his ability to perform medium work. Plaintiff most recently worked for the City Government cleaning bridges and canals between December 2009 and July 2010. (Tr. 141). In an 8-hour day, this job required Plaintiff to lift 25 pounds frequently, but not more than 100 pounds ever; climb for 8 hours; walk and stand for 6 hours; reach for 5 hours; and sit, stoop, kneel and crawl for 2 hours. (Tr. 142). Notably, Plaintiff performed this job until July of 2010 — 3 months after his alleged onset date of April 1, 2010. (Tr. 44). In January and February of 2010, the City Government (BREC) employed Plaintiff as a laborer performing lawn maintenance. (Tr. 141, 146). Plaintiff's job duties included lawn mowing, and picking up and dumping barrels of trash. (Tr. 146). In an 8-hour day working for BREC, Plaintiff walked, stood, and reached for 6 hours; handled, grabbed, and grasped for 5 hours; sat, climbed, stooped, kneeled and crouched for 2 hours; and frequently lifted 25 pounds, but never more than 100 pounds. (Tr. 146). Plaintiff worked as a laborer in 2006 and 2007, tying rebar; cleaning, picking, and shoveling the ground; and pouring and finishing concrete. (Tr. 141, 144). In this capacity, Plaintiff walked, stood, reached, handled, grabbed, and grasped for 6 hours a day; climbed for 4 hours; and sat, stooped, and kneeled for 2 hours. (Tr. 144). Plaintiff also rolled wheelbarrows full of cement, and frequently lifted 25 pounds, but never lifted more than 200 pounds. (Tr. 144).

Plaintiff maintains that evidence of his "past work life" is "irrelevant" because these jobs "did not constitute [substantial gainful activity]" and should not have been "considered as

determinative of his capacity to lift any amount of weight." (R. Doc. 9 at 10). However, evidence of "part-time work that does not satisfy the definition of substantial gainful activity is relevant in assessing [a claimants] credibility, RFC and ability to work." *Porche v. Astrue*, No. 11-555, 2013 WL 4046271, at *4 n.10 (M.D. La. Aug. 8, 2013); *see also Vaughn v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (ALJ properly considered claimants part-time work in determining her RFC); *Gachter v. Colvin*, No. 13-168, 2014 WL 2526887, at *10 (N.D. Tex. June 4, 2014) ("While the part-time work referenced by the ALJ in his credibility determination was not substantial gainful activity, such activity further supports the ALJ's credibility finding that Gachter was not as functionally limited as claimed."); *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (ALJ appropriately considered claimant's part-time work in determining his RFC and noting "the fact that he could perform some work cuts against his claim that he was totally disabled"); *Jesse v. Barnhart*, 323 F. Supp. 2d 1100, 1106 (D. Kan. 2004) ("here plaintiff actually worked; when work is not substantial gainful employment, the ALJ can consider this a factor in his determination of credibility"); 20 C.F.R. § 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); 20 C.F.R. § 416.929(c)(4) ("In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities (or if you are a child, your functioning), we consider all of the available evidence . . . ."). Therefore, the evidence provides further support for the ALJs RFC determination.

      The ALJ likewise did not err by adopting the RFC assessment of non-examining medical consultant, Dr. Maria Pons. Dr. Pons reviewed the available record (Tr. 45-46), including Plaintiff's medical records from both the Baton Rouge General (Tr. 168-72, 173-76) and consultative examiner, Dr. Francis (Tr. 179-83), in addition to Plaintiff's reported work history

and activities of daily living (Tr. 127-36, 141-46). Ultimately, Dr. Pons opined that Plaintiff could perform the exertional requirements of medium work. (Tr. 47-48). Dr. Pons assessed postural limitations resulting from Plaintiff's seizure disorder and advised Plaintiff to avoid all exposure to hazards, including machinery and heights. (Tr. 48-49). Additionally, Dr. Pons found Plaintiff could climb stairs, crouch and crawl occasionally; never climb ladders, ropes or scaffolds, and kneel and stoop frequently. (Tr. 48-49). The Fifth Circuit has advised that "an ALJ may properly rely on a non-examining physician's assessment when, as in this case, those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); *see also Ransom* v. *Heckler*, 715 F.2d 989, 993–94 (5th Cir.1983) (upholding use of non-examining physician's opinion in equivalency determination).

Here, there were no medical source statements of Plaintiff's capabilities, despite his impairments, from any examining physician. The only RFC assessment in the record was Dr. Pons'. Additionally, Dr. Pons' assessment is consistent with the medical evidence, which showed full range of motion, normal gait, normal muscle tone and strength, no motor or sensory deficits, and a negative straight leg raising test. (Tr. 168-69, 173-75, 181, 183). Dr. Pons' assessment is likewise consistent with Plaintiff's past work, which required him to regularly lift 25 pounds and occasionally lift between 100 and 200 pounds. (Tr. 141-46). The only evidence contradicting Dr. Pons' RFC assessment is Plaintiff's testimony, which the ALJ determined was not fully credible. Thus, the Court finds the ALJ's RFC assessment is supported by substantial evidence.

### C. Worn-Out-Worker Rule

Alternatively, Plaintiff argues the ALJ's finding that he not is disabled under the "Worn-Out-Worker" Rule articulated in Rule 203.00(c) of the Medical Vocational Guidelines and 20 C.F.R. § 416.962(b) is not supported by substantial evidence. (Pl.'s Brief, R. Doc. 9 at 6-7); (Pl.'s Reply, R. Doc. 12 at 2-3). To meet the requirements of the Worn-Out-Worker Rule, Plaintiff must show that he: (1) has a severe impairment; (2) is at least 55 years old (a person of advanced age); (3) has a limited education or less; and (4) and has no past relevant work experience. 20 C.F.R. § 416.962(b). The regulations explain that if a claimant meets these requirements, a finding of disability will be made without assessing the claimant's RFC or applying the Medical Vocational Guidelines. 20 C.F.R. § 416.962(b). At the hearing, Plaintiff argued that he met this Rule because he was either an individual of advanced age, or approaching retirement age (59 years and 9 months old); had no past relevant work experience; and had a limited education as he received his GED in the "remote past" — 1976. (Tr. 32).

In his decision, the ALJ acknowledged that "[a]t the hearing, the claimant's attorney argued that his client is disabled and is a worn out worker." (Tr. 17). However, he found Plaintiff failed to meet the Worn-Out-Worker Rule because the "records do not support any type of an impairment that is disabling." (Tr. 17). No further explanation or analysis was provided. Plaintiff contends the ALJ's reasoning is not legally sound, and is otherwise not supported by substantial evidence as the ALJ failed to give any explanation of whether Plaintiff established disability under this Rule.

To begin, Plaintiff correctly notes that the Worn-Out-Worker Rule only requires a claimant to establish a severe impairment at step 2 — not an "impairment that is disabling," as the ALJ proclaimed. *See* 20 C.F.R. § 416.962(b) ("If you have a severe, medically determinable

impairment(s) . . . ."). The ALJ found that Plaintiff's back and knee pain were both severe at step two. Therefore, his only given reason for finding Plaintiff did not meet the Worn-Out-Worker Rule is not legally sound. The ALJ likewise erred by not offering any explanation of whether Plaintiff met this Rule before applying the Medical Vocational Guidelines. *See* SSR 82-63, 1982 WL 31390, at *2 (Jan. 1, 1982) (at step 5, ALJ must consider whether Worn-Out-Worker Rule is met "before considering the numbered rules in Appendix 2 of the regulations"). Nonetheless, any error was harmless as Plaintiff does not satisfy the educational requirement to meet the Worn-Out-Worker Rule.

In addition to being of advanced age and having a severe impairment, the Rule also requires a "limited education or less." 20 C.F.R. § 416.962(b). The ALJ found Plaintiff had at least a high school education. (Tr. 18). The regulations explain that a "High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work." 20 C.F.R. § 416.964(b)(4). Having a high school education would preclude application of the Worn-Out-Worker Rule regardless of whether Plaintiff met the severe impairment requirement.

Here, the record indicates that Plaintiff received his GED in 1976 and was later trained as a truck driver in 1983. (Tr. 33, 132). Since that time, Plaintiff has worked as a delivery truck driver for a furniture store, and otherwise performed manual labor in unskilled jobs. (Tr. 35, 132, 158). Because his GED was received in the "remote past" and he has mostly performed unskilled work, Plaintiff believes he has a limited education, at most, which would meet the requirements of the Worn-Out-Worker Rule. A limited education "means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational

qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education." 20 C.F.R. § 416.964(b)(3).

While Plaintiff's GED was obtained in the remote past and much of his work has been unskilled, his numerical grade level (GED) creates the presumption that he has at least a high school education:

> Education is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability. . . .
>
> The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your physical or mental impairment(s) and by what you have done with your education in a work or other setting. Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities.

20 C.F.R. § 416.964(a)-(b).

At the hearing, Plaintiff argued that because his GED was received in the remote past and he has not used any of those skills since that time, his numerical grade level is not an accurate reflection of his actual level of education — i.e., his ability to meet vocational requirements in terms of reasoning ability, communication skills and arithmetical ability. (Tr. 32). However, this is simply an argument restating the Commissioner's regulation; it cannot be substituted for "impact evidence" of how the remoteness of his GED, or his work experience adversely impact his reasoning ability, communication skills, and arithmetical ability to rebut the presumption created by his numerical grade level. *Perez v. Barnhart*, 415 F.3d 457, 463-64 (5th Cir. 2005)

(ALJ could rely on claimant's testimony that he had a high school degree; fact that claimant took special education classes insufficient to rebut presumption of numerical grade level without evidence of any "impact" special education classes had that would lower his presumed level of education). Here, the only record evidence is Plaintiff's testimony that he received a GED in 1976 and later underwent training as a delivery truck driver. There is no other objective evidence that Plaintiff's education level falls below his presumed level — high school education. Therefore, the ALJ appropriately found Plaintiff had "at least a high school education and is able to communicate in English." (Tr. 18).

Because substantial evidence supports the ALJ's finding that Plaintiff has a high school education, any error in the ALJ's application of the relevant legal standard at this step was harmless. Therefore, the ultimate finding that Plaintiff did not meet the requirements of the Worn-Out-Worker Rule is supported by substantial evidence.

## IV. CONCLUSION

For the reasons discussed above, the Court **ORDERS** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's appeal is **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on September 17, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**